UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAREY F. DALY,

    Plaintiff,

    v.

PEARL SPIRITS, INC., a California corporation, PATRICK SILVAGNIA, DAVID LEE, LUXCO, INC., a Missouri corporation and Does 1-100 inclusive,

    Defendants.
_____/

No. C 08-4398 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This motion for summary judgment filed by defendants Patrick Silvagnia ("Silvagnia") and David Lee ("Lee") and joined by Pearl Spirits, Inc., ("Pearl Spirits") came on for hearing before this court on November 18, 2009. Defendants Silvagnia and Lee appeared by their counsel Alexander M. Weyand and Rebecca M. Hoberg. Defendant Pearl Spirits appeared through its counsel Eric C. Shaw. Plaintiff Carey Daly ("Daly") appeared through his counsel Paul J. Steiner. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion for summary judgment as follows and for the reasons stated at the hearing.

**BACKGROUND**

This action arises out of a dispute concerning defendants' management of Pearl Spirits, a corporation in which plaintiff Daly invested money. Compl. ¶ 8. The complaint alleges that in 1997, Russell Dale, the founder of Pearl Spirits, and defendants Silvagnia and Lee solicited from Daly an initial cash investment in the startup company, Pearl Spirits. Id. Defendants represented to Daly that they intended to develop and market a top shelf,

high-end brand of vodka in the United States, and that they intended to establish Pearl Spirits as a publicly traded company. Id.

In October, 1997, Daly made an initial cash investment of $50,000 in exchange for 50,000 shares of Series A Preferred Stock of Pearl Spirits. Id. ¶ 9. The Pearl Brand, a registered trademark, eventually became the company's sole revenue producing asset. Id. ¶ 10. Between 1997 and 2001, Daly made additional cash investments in Pearl Spirits, totaling approximately $325,000 in exchange for 325,000 shares of Series A Preferred Stock. Id. ¶ 11. In 2001, Daly assigned approximately 95,000 of his shares to additional third party investors, thus reducing Daly's ownership interest to 230,000 shares. Id.

The complaint further alleges, upon information and belief, that in 2001, defendants Lee and Silvagnia terminated employment of Russell Dale, the founder and former chairman and president of the company. Id. ¶ 12. Subsequently, Silvagnia assumed the position of President and CEO of Pearl Spirits, without the approval or consent of the Board of Directors, and took control of the operations and management of the company. Id.

On or about May 7, 2004, Silvagnia and Lee, without the knowledge or consent of Pearl Spirits' shareholders, caused the company to enter into a licensing agreement with defendant Luxco, Inc. ("Luxco"), in which Luxco received the exclusive right to use, license, and market the Pearl Brand. Id. ¶ 13. Daly alleges that the agreement further provided Luxco with the automatically exercising, irrevocable and non-terminable option to purchase the Pearl Brand at a specified time. Id. Daly claims that Lee and Silvagnia actively concealed the existence of this agreement from the company's shareholders. Id. ¶ 14. Daly discovered the existence of the agreement on June 22, 2006, but did not learn of the agreement's benefits to Luxco and Silvagnia at the expense of other shareholders. Id.

The complaint further alleges that since May 2004, Silvagnia and Lee have engaged in several acts of self-dealing, mismanagement, and fraud, including failure to hold an annual shareholder meeting, failure to provide minority shareholders access to corporate books and records, and misuse of corporate funds to pay themselves excessive salaries.

United States District Court
For the Northern District of California

Id. ¶ 15. Daly alleges that this conduct has resulted in financial loss and detriment to himself, as well as other minority shareholders. Id.

Daly also alleges that since 1997, he has repeatedly requested that defendants Pearl Spirits, Lee, Silvagnia, and White & Lee, LLP, the corporation's law firm, issue him stock certificates, hold annual shareholder meetings, and provide corporate disclosure documents relating to the company's income and expenses. Id. ¶ 16. However, defendants have not responded to such requests. Id.

Daly alleges state law claims for relief for (1) fraud, (2) concealment, (3) breach of fiduciary duty, (4) restitution based on rescission, (5) conversion, (6) imposition of a constructive trust, (7) appointment of a receiver, (8) injunctive relief, (9) appointment of a referee, and (10) an accounting. In addition, Daly alleges four claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"), set forth as causes of action 11 through 14.

Daly filed his complaint on June 20, 2008 in the Superior Court for the County of San Mateo. Defendants Silvagnia and Lee removed the action to this court on September 19, 2008. Silvagnia and Lee then filed a motion for summary judgment on October 14, 2009, and an amended motion for summary judgment on October 16, 2009. Daly filed his opposition to defendants' motion on October 28, 2009. On November 4, 2009, Silvagnia and Lee filed their reply brief.

**DISCUSSION**

A.   Legal Standard

Summary judgment is generally appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

B.   Motion for Summary Judgment

3

The central issue the court must resolve is the date on which Daly's causes of action arose, thus commencing the limitations period. The essence of the parties' dispute is simple: plaintiff Daly contends that the statute of limitations did not begin to run until he suffered actual monetary loss in June 2006, when defendants sold the assets of Pearl Spirits. Defendants Silvagnia and Lee, by contrast, insist that all of plaintiff's claims are time-barred as the statutory period commenced much earlier, when Daly first suspected fraudulent activity.

1.      Daly's RICO Claims

RICO makes it a crime to conduct or participate in an enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). "RICO does not provide an express statute of limitations for actions brought under its civil enforcement provision. Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 146 (1987). However, the Supreme Court has determined that the statute of limitations applicable to civil RICO claims is four years. Id. at 156; Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001).

The Ninth Circuit has adopted the "injury discovery" statute of limitations rule for civil RICO claims. Pincay, 238 F.3d at 1109 (citing Grimmett v. Brown, 75 F.3d 506, 511 (9th Cir. 1996)). Under the injury discovery rule, "the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action. . . . Thus, the injury discovery rule creates a disjunctive two-prong test of actual or constructive notice, under which the statute begins running under either prong." Pincay, 238 F.3d at 1109 (internal quotation marks omitted). With respect to constructive notice, "the plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation, which, if reasonably diligent, would have led to discovery of the fraud." Id. at 1101 (quoting Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 275 (9th Cir. 1988).

In Volk v. Davidson, 816 F.2d 1406 (9th Cir. 1987), the Ninth Circuit held that receiving written disclosure of the possibility of injury was sufficient to put a RICO plaintiff

4

on constructive notice of his injury. 816 F.2d at 1412, 1414-15.  There, the plaintiffs had invested in land, and the offering materials stated that the land contained a substantial amount of coal and would therefore result in tax benefits to the plaintiffs. Id. at 1409-10.  In 1978, the plaintiffs learned from the general partner that the land in fact contained less coal than had been represented. Id.  In 1982, the IRS disallowed the deductions plaintiffs had taken in 1976-1978 as a result of the low quantity of coal present on the land. Id. at 1411.

Although the Volk plaintiffs argued that their injury occurred in 1982, the Ninth Circuit rejected their argument, holding that cognizable injury occurs when an investor enters into a transaction as a result of material misrepresentations. Id. at 1412.  "This constitutes the injury giving rise to a cause of action, even if an actual monetary loss is not sustained until later." Id.  "Appellants should have brought their action once they discovered or should have discovered the facts constituting their claim.  Defrauded securities purchasers are not permitted to delay in bringing an action while avoidable damages accrue." Id.

Pursuant to the Volk holding, Daly's RICO claims are time-barred, because he suspected fraud more than four years before filing his complaint.  Daly filed his complaint on June 20, 2008; therefore, the earliest date upon which Daly could have suspected fraudulent activity and still filed a timely action is June 20, 2004.

Here, the evidence demonstrates that he suspected such activity before June 20, 2004.  Beginning as early as 2002, Daly received information indicating that the promises defendants made to entice him to invest in Pearl Spirits were untrue.  In a letter dated October 8, 2002, defendant Lee, in his capacity as legal counsel for Pearl Spirits, stated to Daly that defendants never told Daly that the company would be taken public, and moreover, that the company had never planned on going public.  Weyand Decl., Ex. 51, page 2.  At this point, Daly had sufficient information to warrant a reasonable investigation regarding his suspicions that defendants were engaging in fraudulent conduct.

Furthermore, Daly wrote several letters to Chris Burman, the company's majority shareholder, expressing his suspicion of and dissatisfaction with the conduct of Pearl

Spirits and its officers and directors. For example, Daly wrote a letter to Mr. Burman dated March 4, 2004, expressing Daly's understanding that based upon the advice of legal counsel, Daly "should be filing a legal action against Pearl Spirits, Inc., [its] officers, and [its] directors, for reasons that by now, have been communicated to you several times." Weyand Decl., Ex. 63. In his letter, Daly continues to state:

> It is my position that several actions have been taken by Pearl Spirits management and [its] Directors, which are to my detriment as a founding shareholder . . . [and] that certain appropriate corporate actions have not been taken which would have been to my benefit. It is also my position that the overall Director and Shareholder structure has been manipulated, in an effort to block any defensive action by me, or any other shareholder. . . . I believe that Pearl Spirits would never have gotten off the ground without my initial and subsequent investments, which I believe were solicited under false pretenses. . . . The draft legal complaint has been completed and the only thing keeping it from being filed is my belief that you will either do the right thing yourself or initiate the right action at the corporate level of Pearl.

Weyand Decl., Ex. 63.

Daly wrote another letter to Mr. Burman, dated April 16, 2004, stating many of the same concerns as those expressed in his March 4, 2004 letter. Daly explains that he consulted a San Francisco attorney, who opined that Daly "should be filing legal action" against the company and its officers and directors. Daly's second letter further notes that "[n]ow, the possibility of turning over the marketing and distribution of the board to a third party, raises serious questions as to who will benefit from such a decision, while lacking corporate authority to make such a decision without appropriate corporate action." Weyand Decl., Ex. 65. This statement shows that Daly at least suspected that Pearl Spirits was considering entering into a transaction with a third party. Such suspicions are sufficient to warrant a reasonable inquiry as to whether an agreement was being executed. Accordingly, Daly knew or should have known that Pearl Spirits was entering into a transaction with a third party as early as April 16, 2004, the date of this letter.

In a May 6, 2004 email, Daly continued to express his suspicions about defendants' conduct. His email states, in relevant part:

6

> [T]he notion that Pat thinks he can make the company his private sandbox and do whatever he wants, is outrageous. *I can not imagine his attorney looking the other way while they rape and pillage the company.* I am going to wait the deadline to Burman out and then, I say we file litigation against the company, Burman, Pat and anyone else *complicit in this scam*.

Weyand Decl., Ex. 65 (emphasis added). This email further demonstrates that Daly suspected the company and its management of engaging in racketeering activity. Therefore, the court finds that the statutory period had already begun to run before June 20, 2004.

Daly wrote a third letter to Mr. Burman, dated May 3, 2004, stating essentially the same concerns as in the previous two letters. In each of the three letters, Daly states that he has set a deadline for himself to decide his "appropriate action and move forward." However, instead of filing the instant action on or about any of those proposed dates, he continued to send letters to Mr. Burman expressing his suspicions about the conduct of the company and its management. Thus, Daly knew the facts constituting his causes of action before June 2004.

Finally, on May 13, 2004, defendant Lee, in his capacity as counsel for Pearl Spirits, responded in writing to Daly's previous three letters to Mr. Burman. Lee's letter advised Daly that:

> the Company has licensed the Pearl brand and intellectual property to David Sherman Corporation[1], a 50 year-old company with an impressive track record and many well-known alcoholic beverage brands under management. The arrangement provided for the purchase of selected assets of the Company and an exclusive license in certain territories to sell the Company's products in exchange for a commission on each case sold over a five-year period.

Weyand Decl., Ex. 67. In his deposition, Daly admits that he received the above letter from Lee in "April or May" of 2004. Weyand Decl., Ex. 1, pages 378-80.

Moreover, in a May 21, 2004 letter to Pearl Spirits' shareholders, defendant Silvagnia informed the company's shareholders of the company's transaction with Luxco

---

[1] The David Sherman Corporation is now known as Luxco.

(formerly known as the David Sherman Corporation). Weyand Decl., Ex. 68. Daly admits to receiving this letter in "the end of May or beginning of June." Weyand Decl., Ex. 1, page 392. Thus, the court finds that Daly knew or should have known that Pearl Spirits entered into a transaction with a third party before June 20, 2004. Accordingly, to the extent Daly's RICO claims rely on defendants' transaction with Luxco, they are time-barred.

The above evidence demonstrates that Daly suspected fraudulent conduct as early as 2002. His letters state that on several occasions he was advised by an attorney that he should bring suit against defendants; yet he failed to do so until the statute of limitations had run. Moreover, his numerous letters to defendants express his suspicion of defendants' conduct. Therefore, Daly had constructive notice of fraud from the moment he discovered or should have discovered facts constituting his claim. Injury in the form of monetary loss was not required for the statute of limitations to commence.

Accordingly, the court finds that Daly's RICO claims are time-barred. The court therefore GRANTS defendants' motion for summary judgment with respect to Daly's RICO claims.

2.  Daly's State Law Claims

Similar to Daly's RICO claims, his state-law claims are also time-barred. Daly's complaint alleges the following state-law causes of action: (1) fraud, (2) concealment, (3) breach of fiduciary duty, (4) restitution based on rescission, (5) conversion, (6) imposition of a constructive trust, (7) appointment of a receiver, (8) injunctive relief, (9) appointment of a referee, and (10) an accounting.

Of Daly's ten state-law claims, causes of action six through ten are remedies rather than independent substantive claims. See Glue-Fold Inc. v. Slautterback Corp., 82 Cal.App.4th 1018, 1023, n. 3 (2000) ("constructive trust and an accounting . . . [are] equitable forms of remedies . . . dependent upon a substantive basis for liability"); see also Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 843 (9th Cir. 2009) ("[A]ppointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy which does not

affect the ultimate outcome of the action."); 55 Cal. Jur. 3d Referees § 1 (describing appointment of a referee as a remedy). Thus, whether these causes of action are time-barred will depend on the validity of the relevant underlying substantive claims, and "they have no separate viability if all of [plaintiff's] other causes of action are time-barred." Glue-Fold Inc., 82 Cal.App.4th at 1023.

Turning to Daly's first two substantive state-law claims, the statute of limitations for a fraud or concealment cause of action is three years. Cal. Code Civ. Proc. § 338(d). The limitations period begins to run when a plaintiff discovers the facts constituting the fraud or mistake. Id. Daly alleges that defendants mismanaged the company, intentionally withheld information from Daly about the Pearl-Luxco transaction, failed to award Daly distribution rights in the state of Hawaii as promised, and breached their promise that Daly would remain the majority shareholder of Pearl Spirits.

As discussed above under the analysis of Daly's RICO claims, Daly discovered facts constituting the alleged fraud before 2006. He learned of the possibility of a transaction between Pearl Spirits and a third party through two May 2004 letters from defendant Lee. Moreover, Daly also suspected that the company's officers and directors were mismanaging the company long before 2006, as evidenced by Daly's March, April, and May 2004 letters to Mr. Burman. Finally, Lee sent Daly a letter in September 5, 2000, stating that the company had never intended to give Daly full distribution rights in the state of Hawaii. Weyand Decl., Ex. 20. In order for the complaint, filed June 20, 2008, to be timely with respect to this cause of action, Daly must have discovered the facts constituting fraud no earlier than June 20, 2005. The evidence, however, establishes that he first discovered such information long before that date. Accordingly, Daly's fraud and concealment claims are time-barred.

Turning to Daly's third cause of action, pursuant to California Code of Civil Procedure section 343, the statute of limitations for a breach of fiduciary duty claim is four years. Stalberg v. Western Title Ins. Co., 230 Cal.App.3d 1223, 1230 (1991). The

discovery accrual rule applies to breach of fiduciary duty claims. Id.  Daly alleges that Pearl Spirits' directors and officers refused to allow Daly access to the company's books and records, refused to pay dividends, failed to hold shareholders' meetings, engaged in self-dealing, and licensed the sale of the Pearl brand intellectual property without Daly's knowledge or approval.

To the contrary, Daly clearly suspected the facts constituting his breach of fiduciary duty claim prior to June 20, 2004.  For example, Daly began complaining about his lack of access to the company's financial records as early as August 2000, when he wrote a letter to Silvagnia expressing his dissatisfaction with the unavailability of financial reports. Weyand Decl., Ex. 19.  Moreover, several of Daly's letters express his opinion that the company was being mismanaged.  See, e.g., Weyand Decl., Ex. 58, 63, 65, 66. Furthermore, most of these letters also indicate Daly's understanding that he was not the majority shareholder of Pearl Spirits; as such, at the time of these letters, he had sufficient facts to constitute his claim that defendants breached their alleged promise that he would remain the majority shareholder of Pearl Spirits.  Daly should have brought his breach of fiduciary duty claim within four years of his discovery of the above information; since he did not do so, the court finds that this cause of action is time-barred as well.

Daly stated in his papers and confirmed at the hearing that he has abandoned his fourth cause of action for restitution based on rescission.

Regarding the fifth cause of action, a claim for conversion must be brought within three years from the date of the wrongful taking of the property.  Cal. Code Civ. Proc. § 338(c); AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal.App.4th 631, 639 (2006).

Here, Daly alleges that Pearl Spirits entered into a licensing agreement on May 7, 2004, thus preventing Daly from receiving profits or royalties earned by the Pearl brand. Therefore, the three-year statute of limitations began to run on May 7, 2004, the date of the alleged conversion, and the claim is time-barred.

In sum, as all causes of action have either a three or four year statute of limitations, and as Daly discovered the facts constituting his causes of action before the critical dates of June 20, 2004 or June 20, 2005, the court finds that Daly's RICO and state-law claims are time-barred. Accordingly, the court GRANTS summary judgment in favor of defendants. All Doe defendants are dismissed.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion for summary judgment. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 19, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge